**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ALLIED WORLD INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> SCHIBELL & MENNIE LLC f/k/a SCHIBELL MENNIE & KENTOS LLC, RICHARD D. SCHIBELL, and MARY KENTOS as Executrix of ESTATE OF MARK D. KENTOS, <br><br> Defendants. | Case No. 3:19-cv-19426 (BRM) (ZNQ) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants Schibell & Mennie LLC f/k/a Schibell Mennie & Kentos LLC (the "Firm"), Richard D. Schibell ("Schibell") (collectively, "Defendants") seeking to dismiss Plaintiff Allied World Insurance Company's ("Plaintiff") Amended Complaint for Declaratory Judgment (the "Amended Complaint") which seeks a judicial declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (the "DJA") that Plaintiff has no duty to defend or indemnify coverage to Defendants, in connection with any claim asserted by third parties against them, including, but not limited to, the underlying lawsuit filed against Defendants in the Superior Court of New Jersey, Monmouth County, captioned *Estate of Mark D. Kentos v. Richard D. Schibell, Esq., et al.*, Case No. MON-L-3180-17 ("Kentos Lawsuit"). Defendants argue the Court should abstain from retaining jurisdiction over this action because it pertains only to state law disputes between the parties and is presently the subject of a

parallel pending state court litigation. (ECF No. 26.) Plaintiff filed an opposition to the Motion to

Dismiss (ECF No. 32) and Defendants replied. (ECF No. 42.) Having reviewed the submissions

filed in connection with the Motion and having declined to hold oral argument pursuant to Federal

Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing,

Defendants' Motion to Dismiss is **GRANTED.**

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This matter arises out of a dispute over lawyers professional liability insurance policy

indemnity and defense coverage. Plaintiff is a corporation organized and existing under the laws

of New Hampshire and maintains its principal place of business in New York, New York and

"legally transacts insurance business."[2] (Am. Compl. (ECF No. 4) ¶ 4.) The Firm is a New Jersey

limited liability company with its principal office located in Oakhurst, New Jersey (*id.* ¶ 5) and is

composed of two members: Schibell and John G. Mennie ("Mennie") both of whom are citizens

of New Jersey. (*Id.* ¶¶ 5–6.)[3] Mary Kentos, as Executrix of Estate of Mark D. Kentos (the "Kentos

Estate"), represents the interests of the late Mark D. Kentos, a former employee, member and/or

partner of the Firm who, at the time of his death, was a resident and citizen of New Jersey. (*Id* ¶ 7.)[4]

---

[1] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

[2] The Court understands the insurance policies in question specifically refer to legal malpractice insurance policies.

[3] Mennie was neither a party in the Complaint or the Amended Complaint. (*See* ECF Nos. 1, 4.)

[4] According to the Amended Complaint, the "Kentos Estate is named as a defendant in this action because the Kentos Estate is the plaintiff in the Kentos Lawsuit and may claim an interest in one

A.   **Policy Applications**

Plaintiff issued four "LPL Assure Lawyers Professional Liability Insurance" policies to the Firm for policy period: (1) July 3, 2016 to July 3, 2017 ("2016 Policy"); (2) July 3, 2017 to July 3, 2018 ("2017 Policy"); (3) July 3, 2018 to July 3, 2019 ("2018 Policy"); and (4) July 3, 2019 to July 3, 2020 ("2019 Policy") (collectively, "the Policies"). (*Id.* ¶¶ 11–14.) Subject to its terms and conditions, each of the Policies provides a $2 million per claim and aggregate limit of liability. (*Id.* ¶ 15. ) Each of the Policies states:

> By acceptance of this Policy, all Insureds affirm or reaffirm as of the Inception Date of this Policy that:
>
> 1. the statements in the Application are true and accurate and are specifically incorporated herein, and are all Insureds' agreements, personal representations and warranties;
> 2. all such communicated information shall be deemed material to the Insurer's issuance of this Policy;
> 3. this Policy is issued in reliance upon the truth and accuracy of such representations;
> 4. this Policy embodies all agreements existing between the Insureds and the Insurer, or any of its agents, relating to this insurance; and
> 5. if any representation is false or misleading, this Policy shall be void from the inception.

(*Id.* ¶ 16.) Plaintiff issued the 2016 Policy to the Firm in reliance upon the Firm's answers on the 2016 insurance application dated June 7, 2016 ("2016 Application"). (*Id.* ¶ 18.) Specifically, Question 11(a) of the 2016 Application asked: "Has any attorney been the subject of any bar complaint, investigation or disciplinary proceeding within the past 5 years?" (*Id.* ¶ 19.) The Firm answered "No" to Question 11(a). (*Id.*) Plaintiff issued the 2017 Policy to the Firm in reliance upon the 2016 Application, as well as the Firm's submission of a renewal insurance application, which was signed by Schibell and dated May 9, 2017 (the "2017 Application"). (*Id.* ¶ 20.) Question

---

of the Policies to the extent that it is awarded a judgment or settlement in connection with the Kentos Lawsuit." (*Id.*); *see infra* Section I.A.

l0(a) of the 2017 Application asked: "Have there been any new bar complaints, investigations or disciplinary proceedings against any attorney?" (*Id.* ¶ 21.) The Firm answered "No" to Question 10(a). (*Id.*) Plaintiff issued the 2018 Policy to the Firm in reliance upon the 2016 Application and the 2017 Application, as well as the Firm's submission of a renewal insurance application, which was signed by Schibell and dated May 18, 2018 (the "2018 Application").[5] (*Id.* ¶ 22.)

### B.    Misrepresentations in Policy Applications

Plaintiff contends, unbeknownst to Plaintiff, the Firm made material misrepresentations and omissions during the application process for the Policies. (*Id.* ¶ 26.)

#### i.   Disciplinary Action against Schibell

On December 9, 2013, the Office of Attorney Ethics of the Supreme Court of New Jersey (the "OAE") filed a disciplinary action complaint against Schibell in the Supreme Court of New Jersey, in the matter of *Office of Attorney Ethics v. Richard D. Schibell, Esq.*, Docket No. XIV-2012-0450E (the "Disciplinary Action"). (*Id.* ¶ 27.) The OAE alleged Schibell made false representations to the OAE about the nature of various remittances in connection with the Firm's trust account, commingled funds, made false statements of material fact to disciplinary authorities as well as engaged in conduct of dishonesty, fraud, deceit, or misrepresentation in violation of the Rules of Professional Conduct. (*Id.* ¶¶ 28–30.)[6] Thereafter, a disciplinary action review board ("Disciplinary Review Board") issued a decision in the Disciplinary Action dated March 20, 2017 (the "Decision"), and concluded that Schibell engaged in a "protracted scheme and subsequent

---

[5] The 2016 Application, 2017 Application, and 2018 Application are collectively referred to herein as the "Applications."

[6] The Court understands the "Rules of Professional Conduct" to refer to the New Jersey Rules of Professional Conduct.

4

cover up, [and] that he knowingly made false statements to the OAE." (*Id.* ¶ 41.) The Disciplinary Review Board determined it was appropriate to impose a censure on Schibell. (*Id.* ¶ 42.)

### ii. Kentos Lawsuit

On August 6, 2019, the Firm provided Plaintiff with notice of the Amended Complaint filed in the Kentos Lawsuit, which is currently pending against the Firm and Schibell, and sought defense and indemnity coverage from Plaintiff in connection with same. (*Id.* ¶ 43.) As alleged in the Kentos Lawsuit brought by the Kentos Estate, Kentos applied for and was issued a life insurance policy by Northwestern Mutual, Policy No. 18464894, with a death benefit in the amount of $1,500,000.00 (the "Life Insurance Policy"). (*See* ECF No. 4-12 ¶ 14.) In the application for the Life Insurance Policy, Schibell on behalf of the Firm, declared that certain information regarding the Life Insurance Policy was true, including "$500,000 of the life insurance benefits was to be used to fund a business buy/sell agreement with Kentos," and "Kentos owned a 1% ownership interest in Schibell, Mennie & Kentos, LLC which business had a value of $8,000,000." (*Id.* ¶ 15.) Schibell signed the application on behalf of the Firm which provided directly below the signature line the following language: "Any person who includes any false or misleading information on any application for an insurance policy is subject to criminal and civil penalties." (*Id.* ¶ 16.) Kentos alleged, "[a]ll or a portion of the Life Insurance Policy was intended for the benefit of Kentos and his children." (*Id.* ¶ 17.) Relatedly, stemming from divorce proceedings between Kentos and Erin Kelly in the matter of *Mark Kentos v. Erin Kentos¸* Docket No. FM-13-921-15A, a judgement of divorce was prepared by the Firm which expressly recognized the Life Insurance Policy was for the benefit of Kentos and his children and not for the benefit of the Firm. (*Id.* ¶ 22–24.)[7] Following

---

[7] In a premarital agreement dated October 22, 2012 between Kentos and Erin Kelly, Kentos listed the Policy as his personal asset, along with another life insurance policy issued to him by Northwestern Mutual with a similar death benefit of $1.5million. (*Id.* ¶ 19.)

Kentos' death, the Life Insurance Policy proceeds were deposited into the Firm's special escrow account on December 22, 2016. (*Id.* ¶ 36.) The entire $1,500,000.00 in Life Insurance Policy proceeds were paid directly to Schibell after Kentos' death, at his personal residence, and no portion of the Life Insurance Policy proceeds were paid for the benefit of Kentos' children, as intended. (*See id.* ¶¶ 38–42.)

After receiving notice of the Kentos Lawsuit, Plaintiff also independently learned of the Disciplinary Action and obtained a copy of the Decision against Schibell. (ECF No. 4 ¶ 44.) By way of letter to the Firm dated August 23, 2019 (the "Letter"), Plaintiff reserved its rights under the 2018 Policy in connection with the Kentos Lawsuit (*id.* ¶ 45) and asked for copies of all communications, submissions and filings made by or on behalf of Schibell and/or by or on behalf of the Firm in connection with the Disciplinary Action, as well as copies of any communications, submissions, filings and orders made or entered by the OAE and/or the Disciplinary Review Board in the Disciplinary Action. (*Id.* ¶ 46.) In the Letter, Plaintiff also asked whether the Firm had any record of having disclosed the Disciplinary Action to Plaintiff in connection with its underwriting of any of the Policies. (*Id.* ¶ 47.) Pending receipt of the requested materials, Plaintiff agreed to provide Defendants with a defense in the Kentos Lawsuit, subject to a full and complete reservation of its rights. (*Id.* ¶ 48.) Plaintiff expressly reserved its right to withdraw from the defense and right to recoup any and all claim expenses. (*Id.*) The Firm provided Plaintiff with a copy of the Decision and confirmed it did not disclose the Disciplinary Action to Plaintiff. (*Id.* ¶ 49.) Despite numerous requests, the Firm did not provide Plaintiff with a copy of the Disciplinary Action Complaint until October 15, 2019. (*Id.* ¶ 50.)[8] By letter to the Firm dated October 28, 2019, Plaintiff communicated

---

[8] On October 10, 2019, Plaintiff independently obtained from the OAE a copy of the Disciplinary Action Complaint. (*Id.* ¶ 51.)

its conclusion that it is entitled to rescind the Policies based on material misrepresentations made in the Applications and that there would be no coverage for the Kentos Lawsuit. (*Id.* ¶ 52.) Plaintiff subsequently clarified that its rescission of the Policies applied to the Firm, Schibell, and any other insured who does not qualify as an "innocent insured." (*Id.*)

On January 22, 2020, Plaintiff filed the one-count Amended Complaint[9] against Defendants seeking a judicial declaration by this Court that the Policies are rescinded and void *ab initio* as to Defendants and any other insured who does not qualify as an "innocent insured," and Plaintiff, therefore, has no coverage obligations under the Policies for any claims asserted by third parties against Defendants under the Policies, including but not limited to the Kentos Lawsuit. On April 14, 2020, Defendants filed a Motion to Dismiss on the basis that the Court should abstain from exercising jurisdiction over this declaratory judgment action because, among other reasons, it only pertains to state law disputes which is the current subject of a parallel pending lawsuit filed in the Superior Court of New Jersey, Monmouth County, Law Division, Docket No. MON-L-1221-20 ("State Court Action"). (ECF No. 26-1 at 14–16.) On May 18, 2020, Plaintiff opposed the Motion (ECF No. 32) and on June 4, 2020 Defendants replied. (ECF No. 42.)

## II. LEGAL STANDARD

In general, the party "asserting jurisdiction[ ] bear[s] the burden of proving that jurisdiction exists." *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 429 (3d Cir. 2016) (citation marks omitted) (quoting *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012)). However, a motion requesting that

---

[9] Plaintiff first filed its declaratory judgment complaint in this Court on October 28, 2019 and subsequently filed the Amended Complaint on January 22, 2020. (*See* ECF Nos. 1, 4.)

a district court decline to exercise jurisdiction over a DJA claim does not implicate a defect in federal subject matter jurisdiction. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 133 (3d Cir. 2014). Rather, the decision to exercise jurisdiction over DJA claims is committed to the "substantial discretion" of the district court, as informed by a list of factors enumerated by the Third Circuit. *Id.* at 137–48.[10]

## III. DECISION

The DJA provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). "The Supreme Court has long held that this confers discretionary, rather than compulsory, jurisdiction upon federal courts." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)). This is in stark contrast to the general rule "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Reifer*, 751 F.3d at 134 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). Nonetheless, although the DJA confers on district courts a "unique and substantial discretion," the exercise of that discretion must be "sound and reasoned." *Reifer*, 751 F.3d at 139; *Grand Cru, LLC v. Liberty Mut. Ins. Co.*, Civ. A. No. 20-6878, 2020 WL 6938359, at *6 (D.N.J. Nov. 25, 2020).

The DJA is commonly invoked by insurance companies "to seek a declaratory judgment on a purely state law matter" in federal court based on diversity subject matter jurisdiction. *Id.* at

---

[10] Based on the pleadings, the Court is satisfied the requirements of § 1332 have been met with complete diversity among the parties and an amount in controversy exceeding $75,000. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942); *Muhlbaier v. Specialized Loan Servicing LLC*, Civ. A. No. 18-00125, 2018 WL 3238832, at *2 (D.N.J. July 3, 2018).

141. In response to such cases, the Third Circuit has previously observed that "[t]he desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000). Consequently, it became common practice for district courts "to decline to exercise jurisdiction over declaratory judgment actions, involving an insurance company, that are solely brought on diversity, and have no federal question or interest." *Reifer*, 751 F.3d at 142. This principle is especially relevant because the interest of a state "in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum." *Summy*, 234 F.3d at 136. Where state law is uncertain or undetermined, the proper relationship between federal and state courts counsels district courts to "step back" and be "particularly reluctant" to exercise DJA jurisdiction. *Id.* at 136. The fact that district courts are limited to predicting—rather than establishing—state law requires "serious consideration" and is "especially important in insurance coverage cases." *Id.* at 135; *Mattdogg, Inc. v. Philadelphia Indem. Ins. Co.*, Civ. A. No. 206889, 2020 WL 6111038, at *4 (D.N.J. Oct. 16, 2020).

In *Reifer*, however, the Third Circuit cautioned against "declining jurisdiction per se" in such cases, because a "wholesale, 'revolving door' dismissal of such cases" would evidence neither sound nor reasoned discretion. *Id.* at 147 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) and *Bituminous Coal Operators' Assoc., Inc. v. Int'l Union, United Mine Workers of Am.*, 585 F.2d 586, 596 (3d Cir. 1978)) (citations omitted). The Third Circuit instructed district courts to consider a non-exhaustive list of factors when determining whether to exercise jurisdiction over such declaratory judgment actions, including:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;

> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146.[11] Importantly, "[t]he existence of pending parallel state proceedings militates significantly in favor of declining jurisdiction, although it alone does not require doing so." *Id.* at 144–45. As such, when a parallel proceeding exists, a district court should decline to exercise jurisdiction unless the district court has "rigorous[ly] ensur[ed] [itself] that the existence of pending parallel state proceedings is outweighed by opposing factors." *Id.* at 145.

### A.       Existence of a Parallel State Proceeding

The Third Circuit defines a parallel proceeding as "another proceeding [] pending in a state court in which all the matters in controversy between the parties could be fully adjudicated." *Id.* at 137 n.9 (quoting *Brillhart*, 316 U.S. at 495). The parties in the two actions need not be completely identical in order to be parallel, but rather a "substantial identity of parties and claims" must exist. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006). In the

---

[11] The Third Circuit has instructed district courts to give "meaningful consideration" to any relevant factors, and that some factors may be weighed heavier than others based on the circumstances of each case. *Reifer*, 751 F.3d at 146. The Third Circuit has also advised that "there will be situations in which district courts must consult and address other relevant law or considerations." *Id.* Importantly, in the insurance coverage context, the fifth, sixth, and eighth factors are "particularly relevant," to the extent applicable, based on the facts of a particular case. *See Ewart v. State Farm Mutual Auto. Ins. Co.*, 257 F. Supp. 3d 722, 725 (E.D. Pa. 2017) (citing *State Auto Insurance Cos. v. Summy*, 234 F.3d 131, 134 (3d Cir. 2000)).

context of insurance coverage actions, even when the coverage issue is not presently before the state court, a state action will still be deemed parallel if the coverage issue "will as a matter of logic necessarily arise before the matter is concluded in state court." *Atl. Mut. Ins. Co. v. Gula*, 84 F. App'x 173, 175 (3d Cir. 2003).

Here, Defendants contend the State Court Action filed on April 9, 2020 by Defendants, along with seven other "innocent insureds" against multiple parties including Plaintiff, and its affiliate company, seeks damages arising out of Plaintiff's improper rescission of the Policies and its refusal to provide coverage in the Kentos Lawsuit. (ECF No. 26-1 at 13–14.) The claims pled in the State Court Action include breach of contract, consumer fraud, and professional negligence. (*Id.*) The relief sought on these claims includes a declaration that Plaintiff cannot rescind the Policies, that Plaintiff must defend and indemnify Defendants in the Kentos Lawsuit, as well as monetary damages. (*Id.*) Defendants therefore argue the State Court Action is parallel to the present action "in that it encompasses the very same parties and relief sought by Plaintiff in this matter – a declaration of the parties' rights regarding the policies and coverage in the Kentos claim." (*Id.* at 14.) Plaintiff contends the State Court Action is "like this lawsuit" because it concerns Plaintiff's "decision to rescind the Policies based on material misstatements made in the applications, and to deny coverage for the Kentos Lawsuit." (ECF No. 32 at 11). The thrust of Plaintiff's argument against abstention, however, is the State Court Action is "strategic gamesmanship," and "an eleventh-hour attempt to forum shop," and the Court should not reward Defendants by granting abstention. (ECF 32 at 2–3.)

The Court finds the State Court Action clearly falls within the Third Circuit's definition of a parallel action. All the issues to be decided in this case are squarely before the state court through Defendants' complaint in the State Court Action. It is indisputable that the Superior Court of New

Jersey can fully adjudicate all the matters in controversy between the parties here through resolution of that complaint. Just as the State Court Action can resolve Plaintiff's pleas for declaratory judgment regarding those of their insurance policies implicated by the Kentos Lawsuit, so too can the State Court Action fully adjudicate Plaintiff's claims regarding its duties under the Policies vis-à-vis the State Court Action. Moreover, Defendants' claims in the State Court Action share a significant nexus of fact and law to those here, as they all involve Plaintiff's obligations to defend or indemnify Defendants in the Kentos Lawsuit. For these reasons, the Court finds the State Court Action is a parallel proceeding to the present action. This finding creates a presumption against exercising jurisdiction over the present action.

### B.    Other *Reifer* Factors

Having concluded there is a pending parallel state court proceeding, the Court must next determine if the relevant *Reifer* factors outweigh the presumption the Court should decline jurisdiction. *BCB Bancorp. v. Progressive Cas. Ins. Co.*, Civ. A. No. 13-1261, 2014 WL 2434193, at *6 (D.N.J. May 28, 2014).The Court finds they do not.

The first factor is whether a federal court declaration will resolve the uncertainty of the obligation which gives rise to the controversy. While a federal court declaration could resolve uncertainty about the parties' rights and obligations under the Policies, a state court declaration could do so as well. The claims here—including the request for declaratory judgment—are made under state law, and a state forum can resolve the issues the same as a federal court. In that regard, none of the parties assert that this action involves unsettled areas of state law. To the extent Defendants argue the State Court Action is "more comprehensive" and "goes beyond the issues raised," warranting abstention (ECF No. 26-1 at 2, 25), the Court is not persuaded. The obligations at issue here are Plaintiff's obligations to Defendants, not Plaintiff's potential contribution

12

obligations to the other parties in the State Court Action. Uncertainties regarding such extraneous obligations are inapposite to the decision to exercise jurisdiction over this case. Therefore, this first *Reifer* factor is a neutral one.

The second factor is the convenience of the parties. The parties do not dispute that both the federal and state forums are equally accessible to all parties and that neither action has proceeded significantly past initial filings. The Court agrees. This is particularly true in light of the fact that the state court and federal court share the same geographic region, thereby precluding any argument there is a great geographical convenience served by keeping one case in federal court. *Sumner v. Tompkins Ins. Agencies, Inc.*, Civ. A. No. 16-2218, 2016 WL 3345453, at *5 (E.D. Pa. June 15, 2016). Balancing these interests against each other, the Court finds the second *Reifer* factor to be neutral.

The third factor considers the public interest in settlement of the uncertainty of obligation. Defendants argue there is a "public interest in resolving this issue strongly favors deferring to the state court," because

> there is no sensible argument that the federal court should be favored in determining exclusively state court issues [as t]here is no doubt that the availability of insurance coverage for New Jersey lawyers and citizens is a paramount state interest of New Jersey. This case is all about New Jersey.

(ECF No. 26-1 at 25.) Plaintiff argues "this matter does not implicate any public interest in the settlement of the uncertainty of obligation," and where no strong policy interest is implicated, courts should exercise their discretion to maintain jurisdiction. (ECF No. 32 at 19.) The Court finds the third factor to also be neutral because there is not any public interest at stake other than the usual interests in fair adjudication, which this Court is well-equipped to address. *Reifer*, 751 F.3d at 147 (providing that "federal and state courts are equally capable of applying settled state law to

a difficult set of facts") (quoting *Heritage Farms Inc. v. Solebury Twp.*, 671 F.2d 743, 747 (3d Cir. 1982)); *see also Evanston Ins. Co. v. Neuromonitoring Techs., Inc.*, Civ. A. No. 18-11497, 2019 WL 1916203, at *4 (D.N.J. Apr. 30, 2019).

The fourth factor is the availability and relative convenience of other remedies. Defendants argue the single remedy sought by Plaintiff—a declaratory judgment affirming Plaintiff's rescission of the Policies—is available in the State Court Action. (ECF No. 26-1 at 25.) Plaintiff contends this Court "is practiced in applying state law to recission matters property before it," and should grant effective relief here. (ECF No. 32 at 20.) The fourth factor weighs against exercising jurisdiction because the New Jersey Declaratory Judgment Act, N.J. Stat. Ann. §§ 2A:16-52–54, allows for substantially similar relief to that provided by the DJA. *See NL Indus., Inc. v. N.J. Dept. of Envtl Prot.*, 936 A.2d 469, 472 (N.J. Super. Ct. App. Div. 2007) (providing that the DJA empowers courts to "declare rights, status and other legal relations to afford litigants relief from uncertainty and insecurity. Its purpose is to end uncertainty concerning the legal rights and relations of parties before they have suffered ineradicable damage or injury for which only a compensatory or coercive remedy can provide redress.") (citations and quotations omitted).

Because the Court has determined that the State Court Action is a parallel proceeding, the fifth and sixth factors, a general policy of restraint when the same issues are pending in a state court and avoidance of duplicative litigation, both weigh against exercising jurisdiction.

The seventh factor seeks to prevent use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata.* Both parties accuse the other of forum shopping. Plaintiff argues:

> It is the Schibell Defendants' State Action - filed nearly six months *after* Allied World had instituted this lawsuit and *after* the Schibell Defendants had prevailed on Allied World and this Court to grant

> multiple extensions of time, which were used to draft litigation to
> file elsewhere - that evidences procedural maneuvering.

(ECF No. 32 at 22.) Defendants argue: "Plaintiff has filed an action in federal court that involves a question of pure state law. In so doing, Plaintiff has dragged the federal court into a question of New Jersey law solely because of some perceived advantage. Such obvious forum shopping should not be approved by the Court." (ECF No. 26-1 at 28.) The Court finds the seventh *Reifer* factor to be neutral. In the Court's view, "both sides have used the declaratory judgment device as a method of procedural fencing." *Steadfast Ins. Co. v. Envtl. Barrier Co., LLC*., Civ. A. No. 2:15-1442, 2016 WL 878122, at *6 (W.D. Pa. Mar. 8, 2016).[12]

Finally, as to the eighth factor, there is an inherent conflict of interest between Plaintiff's duty to defend Defendants in state court and its attempt to characterize that suit in federal court as not falling within the scope of the Policies. Accordingly, this factor militates in favor declining jurisdiction over this case. *See Frederick Mut. Ins. Co. v. Target Corp.*, 301 F. Supp. 3d 515, 522 (E.D. Pa. 2018).

In sum, the Court concludes, after weighing all these factors, that it declines to exercise jurisdiction. Contrary to Plaintiff's contentions, it does not matter whether the parallel action is pending in state or federal court; nor whether it was filed first or second. The existence of a

---

[12] The Third Circuit addressed similar facts in *Summy* and concluded that it was "irrelevant that [a] state declaratory judgment petition was filed after its counterpart in the District Court." 234 F.3d at 136; *Esurance Insurance Company v. Bowser*, 710 F. App'x 110, 111–12 (3d Cir. 2018) (noting that a "subsequently filed state court declaratory judgment action" designed to create a parallel state proceeding is not improper). To the contrary, the Third Circuit has expressed greater concern that "the state's interest in resolving its own law must not be given short shrift simply because one party or indeed, both parties, perceive some advantage in the federal forum." *Summy*, 234 F.3d at 136.

pending, and more comprehensive lawsuit in New Jersey state court and the need to avoid duplicative litigation makes it prudent to decline to exercise jurisdiction over this case.

**IV.      CONCLUSION**

For the reasons discussed above, this Court abstains from exercising jurisdiction under the DJA in this insurance coverage dispute, in favor of the parties proceeding in the ongoing and more comprehensive state court litigation. Accordingly, Defendants' Motion to Dismiss is **GRANTED** and the case is **CLOSED**. An appropriate order follows.


Dated: December 29, 2020

                                        */s/ Brian R. Martinotti*
                                        **BRIAN R. MARTINOTTI**
                                        **UNITED STATES DISTRICT JUDGE**

16